Walter OLSON, Petitioner-Appellant,†
v.
TOWNSHIP OF SPOONER and County of
Washburn, Respondents.

Court of Appeals

*No. 85–2166. Submitted on briefs August 19, 1986.——Decided
September 16, 1986.*

(Also reported in 395 N.W.2d 808.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For the appellant, Walter Olsen, briefs were submitted by *W.W. Bitney* of *Bitney Law Firm, Ltd.*, of Spooner.

For the respondent, Town of Spooner, a brief was submitted by *Thomas G. Kissack* of *Lawton and Kissack* of Spooner.

For the respondent, County of Washburn, a brief was submitted by *Jeffrey Kohler, District Attorney* for Washburn County.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    Walter Olsen appeals a judgment dismissing his inverse condemnation suit against Washburn County and the Township of Spooner.[1] Olsen challenges the trial court's application of sec. 893.80(1)(a), Stats., governing notice of claim, to an inverse condemnation suit brought under sec. 32.10, Stats. Because we conclude that sec. 893.80(1)(a) governs actions brought against governmental subdivisions under sec. 32.10, and because the trial court properly applied the notice of claim statute, we affirm.

In 1981, Spooner improved a town road that ran through Olsen's property. Although Spooner owned a right-of-way, the improvements entailed altering some of Olsen's property adjacent to the right-of-way. Spooner never exercised its power of condemnation over this adjacent property.

In 1984, Olsen commenced an inverse condemnation action against Spooner by filing a verified petition with the Washburn County Circuit Court, pursuant to sec. 32.10. This action represented the first written notice of his claim against Spooner.

The circuit court dismissed Olsen's suit, finding that the 120-day limit for filing written notice of claim described in sec. 893.80(1)(a) applied to inverse condem-

---

[1] "Inverse condemnation" is the name commonly used to describe an action commenced by a property owner to recover damages for a taking against "a person possessing the power of condemnation" who has not exercised that power. Section 32.10, Stats.

nation actions under sec. 32.10. The court further found that Olsen failed to satisfy the statutory exception to written notice, showing neither timely actual notice nor lack of prejudice.

## APPLICABILITY OF NOTICE OF CLAIMS STATUTE

Olsen argues that an inverse condemnation proceeding under sec. 32.10 is an administrative, not a judicial, action and thus is not subject to the notice of claim provisions of sec. 893.80(1)(a). He cites several Wisconsin Supreme Court cases holding that inverse condemnation proceedings assume judicial character only when an appeal is taken from the court-appointed administrators' award. *State ex rel. City of Milwaukee v. Circuit Court*, 3 Wis.2d 439, 446, 88 N.W.2d 339, 343 (1958); *Klump v. Cybulski*, 274 Wis. 604, 614, 81 N.W.2d 42, 48 (1957).

These cases, however, predate a 1960 repeal and recreation of ch. 32, Stats., governing eminent domain. The new chapter separated provisions governing condemnation and inverse condemnation into distinct sections, adding the following only to the inverse condemnation section:

> The [verified] petition shall be filed in the office of the clerk of the circuit court *and thereupon the matter shall be deemed an action at law* and at issue, with petitioner as plaintiff and the board, commission or corporation as defendant.

Laws of 1959, ch. 639, sec. 1 [emphasis added]. This clause remains unchanged in the current version of sec. 32.10.

Where the words of a statute are clear, a reviewing court may not look beyond the statute to determine its meaning. *Standard Theatres, Inc. v. Department of Transportation*, 118 Wis.2d 730, 740, 349 N.W.2d 661, 667 (1984). Here, the statute clearly provides that when a landowner commences an inverse condemnation proceeding, that proceeding is deemed an action at law. The fact that the legislature explicitly imbued inverse condemnation proceedings with a judicial character, less than two years after a series of supreme court opinions held such proceedings administrative, only reinforces the effect of the statutory language.

Olsen also argues that a number of more recent Wisconsin Supreme Court cases support his contention that sec. 32.10 proceedings are administrative.[2] None of these cases, however, construes sec. 32.10 since its 1960 recreation. Rather, the cases Olsen cites consider eminent domain proceedings other than inverse condemnation. The statutes construed in these cases lack language deeming the proceedings to be actions at law. Most, in fact, contain language specifically limiting the circuit court's role to that of an administrative overseer.[3] Thus,

[2] *Gangler v. Wisconsin Elec. Power Co.*, 110 Wis.2d 649, 656-57, 329 N.W.2d 186, 189-90 (1983) (construing sec. 32.05(10)(a), Stats., governing appeal of condemnation proceedings); *Millard v. Columbia County Hwy. Committee*, 25 Wis.2d 425, 427, 130 N.W.2d 861, 862 (1964) (applying sec. 84.09, Stats. (1961)); *Town Board v. Webb*, 118 Wis.2d 362, 365, 348 N.W.2d 591, 593 (Ct. App. 1984) (construing sec. 80.17, Stats.).

[3] *See Webb*, 118 Wis.2d at 364-65, 348 N.W.2d at 593; *Millard*, 25 Wis.2d at 428, 130 N.W.2d at 862.

Olsen's argument attempting to analogize eminent domain proceedings of an administrative nature to inverse condemnation actions is without merit.

Because we determine that sec. 32.10 describes an action at law, we conclude that sec. 893.80(1)(a), Stats., requires the plaintiff to file a notice of claim to preserve his or her right to sue a governmental subdivision. Section 893.80(1)(a) provides:

> (1) *No action* may be brought or maintained against any . . . governmental subdivision . . . unless:
>
> (a) Within 120 days after the happening of the event giving rise to the claim, written notice . . . is served on the . . . governmental subdivision . . . . [Emphasis added.]

██

Statutes should be construed in harmony with the entire system of law. *Muskego-Norway Consolidated School District No. 9 v. Wisconsin Employment Relations Board*, 35 Wis.2d 540, 556, 151 N.W.2d 617, 625 (1967). Here, sec. 32.10 makes no reference to notice of claims, although it contemplates actions against governmental subdivisions. At the same time, sec. 893.80(1)(a) explicitly applies to all actions against governmental subdivisions. To hold that the legislature's silence in sec. 32.10 implied an intent to require no notice of claim against a governmental subdivision would be a discordant construction of the two statutes.

██

Olsen argues that because sec. 32.10 is silent on notice of claim or limitation of action, the legislature intended the doctrines of laches and equitable estoppel to govern inverse condemnation actions. We cannot agree. Laches and equitable estoppel apply more appropriately to actions in equity. Section 32.10 proclaims inverse condemnation an action at law. *See Elkhorn*

*Area School District v. East Troy Community School District,* 127 Wis.2d 25, 30-31, 377 N.W.2d 627, 630 (Ct. App. 1985). Thus, the only reasonable construction dictates that the notice of claim requirement of sec. 893.80(1)(a) applies to inverse condemnation actions brought under sec. 32.10.

## ACTUAL NOTICE AND PREJUDICE

Because we conclude that sec. 893.80(1)(a) governs inverse condemnation actions under sec. 32.10, we next consider Olsen's argument that Spooner had actual notice of his claim and was not prejudiced by the three-year lag between the road construction and filing of the suit.

Section 893.80(1)(a) further provides that:

> Failure to give the requisite [written] notice [within 120 days] shall not bar action on the claim if the . . . subdivision . . . had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant . . . subdivision . . . .

Whether the governmental subdivisions had actual notice of Olsen's claim presents a mixed question of fact and law. What officials knew about the reconstruction project was a factual finding and may not be overturned unless clearly erroneous. Section 805.17(2), Stats. Whether that knowledge constituted actual notice under the law is a legal conclusion and commands no deference to the reviewing court. *Wisconsin Department of Revenue v. Exxon Corp.,* 90 Wis.2d 700, 712-13, 281 N.W.2d 94, 101 (1979), *aff'd,* 447 U.S. 207 (1980).

We agree with the trial court's conclusion that although governmental officials knew of the construction project, they had no actual notice of Olsen's claim

until Olsen filed his inverse condemnation action three years after the improvements' completion. Review of the testimony shows that county and township officials knew of the road improvements and that the improvements would involve altering the face of some of Olsen's adjoining property. However, the record also shows that Olsen observed the construction and, aside from conversing with someone at the county highway department about the removal of trees and fences near the right-of-way, he made no complaints to governmental officials. Moreover, testimony shows that the officials felt that the alterations augmented rather than diminished the value of Olsen's property. Olsen cites nothing in the record to suggest that he gave the officials any reason to believe his property had been damaged. The project enhanced drainage along the right-of-way, provided improved fences, and added erosion control. An official testified that these improvements were not routinely made, but represented additional efforts to satisfy adjacent landowners.

Although governmental officials may have been able to hypothesize from their knowledge of the project that Olsen might have a claim for damages, we cannot impute such knowledge from the instant facts. Even if we were able to impose constructive knowledge of damages on the governmental officials, such an imposition would be insufficient to satisfy the actual notice of claim requirement of sec. 893.80(1)(a). *Elkhorn Area School District v. East Troy Community School District*, 110 Wis.2d 1, 5, 327 N.W.2d 206, 208 (Ct. App. 1982).

We conclude that whether Spooner suffered prejudice through Olsen's failure to meet the 120-day notice requirement is a mixed question of fact and law. The trial court's factual findings must be upheld unless

clearly erroneous. Section 805.17(2), Stats. How these facts fit the statutory concept of "prejudice" is a question of law. *See Pabst Brewing Co. v. City of Milwaukee*, 125 Wis.2d 437, 444, 373 N.W.2d 680, 684 (Ct. App. 1985).

Neither the statute nor Wisconsin case law, however, defines the standard for measuring prejudice to a governmental subdivision.[4] Therefore, we will look to other jurisdictions for the standard of prejudice used in an analogous context.

"Prejudice . . . refers to a delay which results in the inability of claimants to adequately defend their case." *United States v. Eighteen Thousand Five Hundred and Five Dollars and Ten Cents ($18,505.10)*, 739 F.2d 354, 356 (8th Cir. 1984). In this case, the court of appeals applied the federal test for whether a government delay in filing a forfeiture action had abridged the claimants' right to a speedy trial. The last of four factors in this test was whether the claimant had been prejudiced by the delay. The federal courts concluded that a delay of twenty-six months between the government's investigatory seizure of the claimants' property and the government's filing of a forfeiture action did not affect the claimants' ability to adequately defend their case. This definition of prejudice comports with an important pol-

---

[4] Opinions applying sec. 893.80(1)(a) have typically treated the prejudice question summarily, listing facts, then declaring whether these facts supported a finding of prejudice. *See, e.g., Weiss v. City of Milwaukee*, 79 Wis.2d 213, 227-28, 255 N.W.2d 496, 501 (1977).

The equitable doctrine of laches also requires a finding of prejudice. Wisconsin case law dealing with laches has likewise treated determinations of prejudice in a summary fashion. *See, e.g., S.D. Realty Co. v. Sewerage Comm'n*, 15 Wis.2d 15, 23-24, 112 N.W.2d 177, 182 (1961); *Estate of Seefeldt*, 1 Wis.2d 509, 516, 85 N.W.2d 500, 504 (1957).

icy behind the right to a speedy trial: affording parties the opportunity to adequately defend claims.

One of the purposes of sec. 893.80 is to ensure that governmental units have sufficient opportunity to escape prejudice by promptly investigating claims. *Neilsen v. Town of Silver Cliff*, 112 Wis.2d 574, 580, 334 N.W.2d 242, 245 (1983). Defining prejudice as the inability of a party to adequately defend a claim is consistent with the purpose of sec. 893.80(1)(a). Thus, we conclude that the eighth circuit's definition of prejudice is also the appropriate standard for weighing prejudice in the context of sec. 893.80(1)(a).

Here, the trial court found that three years' vegetative growth made difficult a determination of any damages possibly caused by the road construction. The trial court also found that the state of erosion, placement of fences, and nature of the terrain along the right-of-way before construction began could no longer be ascertained. Although mislabled conclusions of law, these are factual findings that are supported by the record. Because these findings are not clearly erroneous, we affirm them.

■These findings support a conclusion that when Olsen finally filed his inverse condemnation suit, Spooner would have been unable to adequately defend against it. We cannot force Spooner to reconstruct material evidence that vanished under the inevitable advance of natural processes. Thus, we conclude that Olsen failed to show that the township and county suffered no prejudice.

Because we affirm the trial court's judgment against Olsen, we do not reach the issue of litigation expenses under sec. 32.28, Stats.

*By the Court.*—Judgment affirmed.